Maximilian Moss, S.
Henry Von der Heid, the testator, died on June 28,1948, a resident of Brooklyn, unmarried and without issue, but leaving surviving him as his only next of kin, children of a sister who had predeceased him. By his last will and testament all of his property was bequeathed to the State Bank of the Union of Soviet Socialist Republics for use within the Soviet Union.
A decree of this court made by Surrogate Rtjbenstein on December 31, 1954, based on a stipulation dated May 21, 1954 between the parties, adjudged that the balance of the net estate, amounting to $13,163.17 with interest, which would otherwise be distributed to the State Bank of the Union of Soviet Socialist Republics, be deposited in court in the name of the estate pursuant to section 269 of the Surrogate’s Court Act. The decree also provided that if within two years after the making of the decree circumstances have so changed within the Union of Soviet Socialist Republics as to warrant the transmittal of the funds to the Soviet Union, then said bank may make application therefor. Within such prescribed period, the State Bank of the Union *813 of Soviet Socialist Republics, by its attorney in fact, filed with this court a petition alleging the following, namely: “ The circumstances at the present time are such as to warrant the granting of the present application.”
The Attorney-General of the State of New York and the Public Administrator of Kings County filed answers denying that circumstances at the present time within the Union of Soviet Socialist Republics warrant the granting of the application, and affirmative counterclaims were interposed to that effect. The Attorney-General petitioned the court to make distribution of the fund to two institutions, within the State of New York, to be designated by the Surrogate.
The issues raised by the pleadings were set down for trial on the first day of October, 1958, at which time not a scintilla of proof was offered by the State Bank of the Union of Soviet Socialist Republics to support its claim that present circumstances within the Soviet Union warrant the transfer of the funds to the Soviet Union. In this respect it should be noted that every request of counsel for the Soviet Bank for an adjournment to enable it to procure evidence in support of its contention was granted. In one instance, an adjournment of six months was given to allow the attorney for the Soviet Bank to offer evidence by letters rogatory from persons within the Soviet Union, yet no such evidence was forthcoming. At the hearing, an offer was made to have the court and the Attorney-General of the State of New York visit the Soviet Union at the expense of the latter to conduct hearings there, which offer was promptly rejected both by the court and the Attorney-General.
No proof having been.offer.ed.in behalf of the State Bank of the Union of Soviet Socialist Republics, its petition is dismissed. The policy of the Surrogate’s Court to prohibit the sending of bequests of money or property behind the ‘ ‘ iron curtain ’ ’ is confirmed. The prayer of the Attorney-General and of the Public Administrator for counterrelief requiring the court to designate two institutions as recipients of said fund is granted.
The court does hereby designate the Brooklyn Institute of Arts and Sciences, for the use and benefit of the Brooklyn Academy of Music, and New York University to be the recipients of said fund in equal shares, and the Treasurer of the City of New York is directed to make payment of said fund accordingly.
The Brooklyn Academy of Music is about to commence its second century of service to the City of New York with deep roots in American ideology. It deserves the full support of the people of the city and no less this court. In its first hundred years of existence, it has been guided by our most prominent *814 citizens and steadfastly has remained faithful to the objectives set by them. In a constantly expanding program of activities, the academy has stood as a beacon light to learning and culture.
New York University is a private university in the public service. It annually satisfies the thirst for knowledge of more young people than any other privately supported institution of higher learning in the world. Because the founders of New York University nearly a century and a half ago established the principle that higher learning shall be available to all qualified young men and women without regard to race, creed, color or social status, students of each of the three major faiths matriculate there annually in greater numbers, respectively, than in any of the country’s other private universities or sectarian seminaries, with active encouragement for each to practice his or her own religion. Fulfilling this eloquent clamor for education from such large numbers strengthens the concept of human dignity so necessary to defeat the foreign ideology of supremacy of State over the individual. In selecting New York University, the court intends to give a degree of official recognition to this unique contribution which New York University is making at this critical period of our history, and commends the statement of the president of the university, that today’s competition among nations is based on ideas rather than battles.